# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

Otar Toidze,

      Petitioner,

      v.                           Case No. 2:26-cv-02286-BCL-cgc

Christopher Bullock,
Field Office Director of U.S. Immigration
and Customs Enforcement, New Orleans
Field Office,

      Respondent.

## ORDER DENYING § 2241 PETITION

Petitioner, Otar Toidze, has filed a Petition for Habeas Corpus under 28 U.S.C. § 2241, by which he challenges his detention without an individualized bond hearing. Doc. 1 at 3. Respondent responded to the petition (Doc. 9), and Petitioner replied to the response (Doc. 11). The Petition for Habeas Corpus (Doc. 1) is **DENIED** for the reasons that follow.

### BACKGROUND

Petitioner is a citizen of the Republic of Georgia who entered the United States without admission or parole in July of 2023. Doc. 1 at 5; Doc. 9-1 at 1. Petitioner was detained in New York City, New York then transferred to this District. Doc. 1 at 4. Petitioner is currently detained at the West Tennessee Detention Center. Doc. 9 at 2; Doc. 11 at 2. On March 17th, 2026, Petitioner filed for a Writ of Habeas Corpus under 28 U.S.C. § 2241 seeking release on his own recognizance or "a custody hearing before a neutral arbiter." Doc. 1 at 20.

1

**LEGAL STANDARD**

Section 2241 authorizes a court to issue a writ of habeas corpus when an individual "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). An alien seeking to challenge his detention relating to removal proceedings may in some circumstances seek relief through a Section 2241 petition. *See, e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**ANALYSIS**

To begin, Petitioner's claims fail to the extent they are based on the APA because 28 U.S.C. § 2241 provides an adequate remedy. As to the habeas claims, Petitioner's failure to exhaust his administrative remedies dooms his statutory claims, which in any event fail on their merits. And Petitioner's detention as required by statute does not violate the Constitution.

**I.    Petitioner's claims under the APA fail because he has an adequate remedy in habeas.**

"The judicial review provisions of the APA provide a limited cause of action for parties adversely affected by agency action." *Jama v. Dep't of Homeland Sec.*, 760 F.3d 490, 494 (6th Cir. 2014). Importantly, judicial review of final agency action under the APA is only available when "there is no other adequate remedy in a court." 5 U.S.C. § 704. This limitation ensures that "the APA's general grant of jurisdiction to review agency decisions is not duplicative of more specific statutory procedures for judicial review." *Bangura v. Hansen*, 434 F.3d 487, 501 (6th Cir. 2006).

In this case, habeas corpus provides an adequate remedy for Petitioner's claims. *See Singh v. Noem*, No. 2:25-CV-00157-SCM, 2026 WL 74558, at *7 (E.D. Ky. Jan. 9, 2026); *cf. Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (noncitizens' challenge to confinement and removal under the Alien Enemies Act fell within the "core" of habeas corpus and thus could not be brought under the

APA). APA review therefore is inapplicable here, and Petitioner's claims fail to the extent they are based on the APA. For that reason, Petitioner's APA claims are dismissed for failure to state a claim. *See Haines v. Fed. Motor Carrier Safety Admin.*, 814 F.3d 417, 428 (6th Cir. 2016).

    **II.**       **Petitioner's claims challenging application of 8 U.S.C. § 1225.**

        **A. The Exhaustion Doctrine precludes review of Petitioner's statutory claims.**

The Supreme Court "long has acknowledged the general rule that parties exhaust prescribed administrative remedies before seeking relief from the federal courts." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). That requirement makes obvious sense when Congress requires exhaustion. It arguably makes less sense when, as in Section 2241, Congress has not done so. Perhaps the so-called prudential exhaustion doctrine—a matter of "sound judicial discretion," *id.*—can be explained as an aspect of ripeness, the idea being that there is no ripe dispute if the Executive Branch has not had its final say. Or perhaps it is a shirking of the federal courts' "virtually unflagging" duty to exercise jurisdiction in cases properly before them. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013)).

In any event, both the Supreme Court and the Sixth Circuit have embraced the doctrine, which is thus binding on this Court. *See, e.g.*, *McCarthy*, 503 U.S. at 144; *Shearson v. Holder*, 725 F.3d 588, 593–94 (6th Cir. 2013). Exhaustion gives an agency "the opportunity to correct its own mistakes with respect to the programs it administers"; "discourages disregard of the agency's procedures"; promotes efficiency because "[c]laims generally can be resolved much more quickly and economically before an agency"; and "may produce a useful record for subsequent judicial consideration." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (quotation marks and citations omitted).

True, the exhaustion requirement can be excused if exhaustion would be futile. But, as the

Sixth Circuit has recently explained, in determining whether exhaustion would be futile, "the crucial inquiry [is] whether the agency can provide the relief requested if the argument succeeds, not whether it is likely to succeed." *Smith v. U.S. Sec. & Exch. Comm'n*, No. 24-3907, 2026 WL 850806, at *7 (6th Cir. Mar. 27, 2026).[1] And, here, the immigration judge or Board of Immigration Appeals ("BIA") could certainly grant petitioner a bond hearing or release on bond if he were to prevail on his claims; indeed, the whole theory of his claims is that the law compels the immigration judge to give him such a hearing (and not, say, that the federal courts should be stepping in to run bond proceedings on a categorical basis). And while Petitioner suggests that the fact that he is imprisoned warrants an exception to the exhaustion requirement, he cites no authority for that proposition, which would swallow the general requirement for exhaustion for aliens challenging their removal or detention relating thereto. Petitioner's statutory claims are thus barred by the exhaustion doctrine[2] and due to be rejected for that reason alone.

### B. Under the governing statutes, Petitioner is an "applicant seeking admission" subject to mandatory detention.

Even if they were not barred by the exhaustion doctrine, Petitioner's statutory claims fail on the merits. Petitioner's statutory eligibility for a bond hearing is determined by whether his detention is governed by 8 U.S.C. § 1225(b)(2) or 8 U.S.C. § 1226(a). Section 1225(b)(2) provides:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien

---

[1] *Smith* addressed the futility exception in the context of an express exhaustion requirement that excepted situations in which "there was reasonable ground for . . . failure to" exhaust. 2026 WL 850806, at *5 (quoting 15 U.S.C. § 78y(c)(1)). That makes no difference: There is no logical reason for treating the concept of futility differently in the context of a prudential rule than in the context of a statute with a generally worded exception that encompasses the concept of futility.

[2] The undersigned has in several similar cases concluded that the exhaustion doctrine did not bar petitioner's claims. The Court has now reached a different conclusion based on the Sixth Circuit's recent clarification of the law in *Smith*. *See* 2026 WL 850806, at *7.

seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A). In contrast, Section 1226(a) provides, in relevant part:

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General--

**(1)** may continue to detain the arrested alien; and

**(2)** may release the alien on--

> **(A)** bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or

> **(B)** conditional parole . . . .

8 U.S.C. § 1226(a)(1)–(2).

Petitioner is an "applicant for admission" subject to mandatory detention under Section 1225(b)(2). "Congress defined 'applicant for admission' broadly in Section 1225(a)(1) to include all 'alien[s] present in the United States who have not been admitted.'" *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 504 (5th Cir. 2026); *see* 8 U.S.C. § 1225(a)(1) ("An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.").[3] That definition encompasses Petitioner because he admits that he is present in the United States without ever having been legally admitted. Doc. 11 at 4; *see Avila v. Bondi*, No. 25-3248, 2026 WL 819258, at *4 (8th Cir. Mar. 25, 2026). The passage of time

---

[3] Statutory language underscores the point in providing that "'admission'. . . mean[s], with respect to an alien, the *lawful* entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13) (emphasis added). Until his entry into the United States is lawful, Petitioner remains an "applicant for admission," and thus his detention during removal proceedings is mandatory under Section 1225(b)(2). *See Avila v. Bondi*, No. 25-3248, 2026 WL 819258, at *2 (8th Cir. Mar. 25, 2026).

5

makes no difference. Unless and until Petitioner is granted authorization and lawfully admitted into the United States, he remains an "applicant for admission," and his detention during removal proceedings is mandatory under Section 1225(b)(2).

Petitioner cannot avoid mandatory detention by claiming that he is not "seeking admission" in the sense of engaging in affirmative acts to gain admission. Doc. 11 at 6–7. As both the Fifth and Eighth Circuits have held, "the ordinary meanings of the phrases 'applicant for admission' and 'seeking admission' are the same," *Avila*, 2026 WL 819258, at *2, because "when a person applies for something, they are necessarily seeking it," *Buenrostro-Mendez*, 166 F.4th at 502. *See also* 8 U.S.C. § 1225(a)(3) (referring to aliens "who are applicants for admission *or otherwise* seeking admission") (emphasis added). The statutory context confirms the point: The statute does not say that an applicant for admission must be detained "if" he is seeking admission, which strongly suggests that the two phrases do not impose separate conditions. *See Avila*, 2026 WL 819258, at *2. Moreover, to the extent Petitioner is seeking to remain in the country by challenging his removal—as he presumably is because he is seeking relief instead of asking to be removed—he is "seeking admission" even on his own reading of that phrase as a separate condition.[4]

Petitioner fares no better with his argument seeking to cabin Section 1225(b)(2) to those "at or in connection with the border." Doc. 11 at 6. Section 1225(b)(2) does not include such a limitation. Congress surely would have included that limitation if it had intended Section

---

[4] Petitioner points to *Sanchez v. Mayorkas*, 593 U.S. 409 (2021), which held that temporary protected status did not qualify as lawful admission as required to obtain status as a lawful permanent resident under 8 U.S.C. § 1255. Petitioner claims that this shows that "seeking relief from removal" is not the same as "seeking admission," but the case did not address removal. Doc. 11 at 8. In any event, Petitioner does not claim that he is contesting removability under one of the narrow bases that might count as "lawful status" but not "admission" in the context of lawful permanent residence. And even if he did, the more fundamental point remains that, in the context of Section 1225, an "applicant for admission" is necessarily "seeking admission." Because he has not been lawfully admitted, Petitioner falls within Section 1225's detention mandate.

1225(b)(2) to apply only to aliens arriving at the border, a point highlighted by Congress' use of

"arriving aliens" elsewhere in Section 1225. *See Buenrostro-Mendez*, 166 F.4th at 504.

Petitioner further argues that to subject aliens who are present in the interior of the country

without authorization to mandatory detention under Section 1225(b)(2)(A) would render

superfluous Section 1226(c) and the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025). Doc.

11 at 5. Not so. Section "1226(c) and the Laken Riley Act do not mandate the detention of aliens

who otherwise would *not* be subject to mandatory detention, but instead they mandate

the *timing* of the detention of certain aliens"—specifically, by providing that those aliens shall be

detained following release from an underlying offense. *Gomez v. Daley*, No. 2:25-CV-00150-

SCM, 2026 WL 252496, at *6 (E.D. Ky. Jan. 30, 2026); *see also Gomez Hernandez v. Lyons*, No.

1:25-CV-216-H, 2026 WL 31775, at *7 (N.D. Tex. Jan. 6, 2026) ("[T]he [Laken Riley Act] was

not meaningless—it narrowed the discretion afforded to any Administration exercising detention

authority under Section 1226."). Petitioner's anti-superfluity argument is thus baseless—but even

if there were some superfluity that would not justify rewriting the plain text of Section 1225. *See*

*Barton v. Barr*, 590 U.S. 222, 239 (2020). Petitioner's statutory challenge to his detention therefore

fails.

III.    **Mandatory detention as required by a faithful interpretation of Section 1225**
        **does not violate the Constitution.**

The exhaustion doctrine does not bar review of Petitioner's constitutional claims because

the BIA cannot adjudicate them. *See Smith*, 2026 WL 850806, at *7; *Hansen*, 434 F.3d at 494

(citations omitted). Therefore, the Court will not require exhaustion. But those claims also fail on

the merits.

Petitioner claims that his detention without an individualized bond hearing violates Fifth

Amendment substantive and procedural due process, as well as the Fourth Amendment prohibition

against unreasonable seizures. Doc. 1 at 18–20. The Court disagrees. "[T]he Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993) (citing *The Japanese Immigrant Case*, 189 U.S. 86, 100–101 (1903)). But, when a noncitizen has not been lawfully admitted to the United States, "the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law" because such noncitizens have "only those rights regarding admission that Congress has provided by statute." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 138, 140 (2020). This is the result of "the so-called 'entry fiction' theory of immigration law," under which "[a]liens who have not 'entered the United States within the meaning of the law,' i.e., who were never lawfully admitted and do not have leave to remain, are 'still in theory of law at the boundary line,'" *Gonzalez v. Ladwig*, No. 2:26-cv-02017-MSN-atc, 2026 WL 413602, at *11 (W.D. Tenn. 2026) (Norris, J.) (quoting *Kaplan v. Tod*, 267 U.S. 228, 230–31 (1925)), where they have only those rights provided by Congress. *See Thuraissigiam*, 591 U.S. at 140. And, here, Congress did not provide a right to a bond hearing. 8 U.S.C. § 1225(b)(2)(A).

Petitioner cites no authority—and the Court is aware of no authority—establishing that the Fourth Amendment or the Due Process Clause prevents the Government from detaining an alien in compliance with the law simply because he was wrongly released earlier after entering the country illegally. The Court will not impose that extreme rule in the absence of authority compelling it.

In sum, neither the governing statutes nor the Constitution prevent Petitioner's detention in connection with removal proceedings or guarantee Petitioner an individualized bond hearing during that process. Those claims therefore do not support the Petition.

## **CONCLUSION**

For the foregoing reasons, the Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**.[5]

The Clerk is **DIRECTED TO CLOSE THIS CASE**.

   **IT IS SO ORDERED**, this 1st day of April, 2026.


                                           s/ *Brian C. Lea*
                                           BRIAN C. LEA
                                           UNITED STATES DISTRICT JUDGE

---

[5] Because the Court has denied the Petition, Respondent's request for an order precluding transfers pending resolution of his petition (Doc. 1 at 7) is moot and need not be addressed. In the Legal Framework of his Petition—the part preceding the claims—Petitioner includes a lengthy argument to the effect that detainee transfers can in some circumstances violate ICE policies and the right to counsel. Doc. 1 at 10–14. The Court need not address this argument because it is completely disconnected from Petitioner's claims (*Id.* at 15–20) and from his sought-after relief—a bond hearing or outright release, not a transfer back to his original district of confinement (*Id.* at 20–21). But, in any event, 8 U.S.C. § 1252(b)(9) bars the Court from reviewing any claims based on this argument, since any such claim would be bound up with removal proceedings and thus must be channeled into a petition for review filed with the appropriate Court of Appeals. *See, e.g.*, *Aguilar v. U.S. Immigr. & Customs Enf't*, 510 F.3d 1, 13 (1st Cir. 2007).